JOURNAL ENTRY and OPINION
{¶ 1} Appellant Cynthia A. Kline appeals the trial court's judgments in her case and assigns the following errors for our review:
 {¶ 2} "I. The trial court erred in denying appellant's motion to dismiss due to violation of appellant's right to a speedy trial."
 {¶ 3} "II. The trial court erred in denying appellant's motion to dismiss due to violation of appellant's right against double jeopardy."
 {¶ 4} "III. The trial court erred in denying appellant's motion to dismiss upon the grounds of selective prosecution."
 {¶ 5} "IV. The trial court erred in denying appellant's Crim.R.29 motion to dismiss."
 {¶ 6} "V. The trial court erred in denying appellant's motion for separate trial upon the charges."
 {¶ 7} "VI. The trial court erred in ordering that the sworn testimony set forth in the Lakewood trial not be permitted to be used for purposes of impeachment."
 {¶ 8} Having reviewed the record and pertinent law, we affirm Kline's conviction. The apposite facts follow.
 {¶ 9} The historical facts are set forth sufficiently in the following cases: City of Parma v. Kline (Mar. 7, 1996), Cuyahoga App. Nos. 68998 and 68999 [Kline I]; City of Parma v.Kline (Oct. 14, 1999), Cuyahoga App. Nos. 74617 and 74618 [Kline II]; City of Parma v. Kline (Aug. 30, 2000), Cuyahoga App. No. 78171 [Kline III]; State of Ohio, ex rel. Kline v.Carroll (January 4, 2002), Cuyahoga App. No. 79737 [Kline IV]; and State, ex rel. Kline v. Carroll (2002), 96 Ohio St.3d 404
[Kline V].
 {¶ 10} The facts essential to this appeal follow. On November 5, 1994 Cynthia Kline was issued a citation for failure to comply with a lawful order of a police officer during a roadblock at the scene of an accident. After receiving the citation, Kline complained to her Councilman, the City Law Director, the City Safety Director, and ultimately filed a complaint with the Parma Police Department. The police department assigned the matter to Lieutenant Cornachio who met with Kline on November 28, 1994 at the Parma Police Department. While there, Kline complained she had observed several cars proceeding through the roadblock on the day of the incident; she believed the police officers treated her unfairly by not permitting her to pass through.
 {¶ 11} During the interview, Kline learned Cornachio had been present at the accident scene. She then told him under the circumstances she believed he could not be fair. Cornachio then tried to terminate the meeting, but Kline refused to leave the police station, despite several requests for her to do so. As a result, Cornachio arrested her for criminal trespass.
 {¶ 12} During the booking procedure, Officer Manning requested Kline relinquish her bottle of prescription medication in compliance with police policy, which prohibited prisoners from possessing medication. Kline placed the bottle in her blouse and refused to comply with Manning's requests to relinquish her medication. Cornachio then called a female officer to retrieve the medicine and subsequently charged Kline with obstruction of official business.
 {¶ 13} Six months later, a jury found her guilty of all three counts. She filed her first appeal. We reversed the trial court in Kline I on the basis that Kline's lawyer was ineffective.
 {¶ 14} On April 16, 1996, two years later and before a new trial was scheduled, Kline wrote a letter requesting the entire Parma Municipal Court to be recused from her case; the court agreed. Seven months later, on October 23, 1996, the Parma Court requested the administrative judge of the Cuyahoga County Common Pleas Court to transfer the case to another jurisdiction. On November 1, 1996, the common pleas court transferred the case to Lakewood Municipal Court.
 {¶ 15} In March 1998, two years later, a second jury in Lakewood found Kline guilty of all counts except trespass. Kline filed her second appeal. This court, in Kline II, agreed with the jury's finding of guilt on the obstruction charge, but disagreed on the finding of guilt on the failure to comply charge. During this appeal, Kline did not challenge the Lakewood court's jurisdiction. On remand, the trial court reimposed the original sentence.
 {¶ 16} In Kline III, Kline appealed the sentence; we, however, dismissed the appeal as untimely filed. On October 18, 2000, we denied her motion to reconsider, and on December 13, 2000, we declined her request to reinstate her appeal.
 {¶ 17} Four years after the Lakewood verdict, Kline filed a motion to vacate the Lakewood sentence, arguing that the Lakewood Municipal Court lacked jurisdiction to try her. In June 2001, she filed a complaint for a writ of prohibition with our court. A year later, in Kline IV, we granted her writ of prohibition and held when a municipal trial court voluntarily recuses or disqualifies itself, only the Ohio Supreme Court has jurisdiction to transfer the case to another jurisdiction or visiting judge. Consequently, we found the Lakewood judgment void and vacated the order. We stated further "Kline and the City of Parma are restored to their positions as of the point in time when the judges of the Parma Municipal Court recused themselves."[1]
 {¶ 18} A year later, the Ohio Supreme Court affirmed our holding in Kline V. The case was transferred to a visiting judge, and a trial was conducted on August 5, 2003. The jury returned a guilty verdict on all counts and this appeal followed.
 {¶ 19} In her first assigned error, Kline argues the trial court erred when it denied her motion to dismiss. She argued her right to a speedy trial was violated. In support of her argument, Kline claimed an unreasonable delay existed between Kline I and her August 5, 2003 trial. Moreover, she also argued an unreasonable delay existed between Kline IV and her August 5, 2003 trial date.
 {¶ 20} Whether a delay in completing a prosecution violates the Sixth Amendment depends upon the circumstances.[2] InPollard, the United States Supreme Court held in determining whether the delay complained upon assumes constitutional proportions, we look at the circumstances to closely ascertain whether the delay was "arbitrary, purposeful, oppressive or vexatious."[3]
 {¶ 21} In the instant case, all of the delays of which Kline complains, occurred during appellate review. In Harrison v.United States,[4] the Supreme Court addressed the same situation. The Court held:
 {¶ 22} "[Harrison] was indicted more than eight years ago and has been tried and convicted three times for the offense here involved. His first conviction was vacated on appeal when it became clear that the man representing him in certain post-verdict proceedings was an ex-convict posing as an attorney; his second conviction was reversed because the Government employed inadmissible confessions against him on retrial; and his third conviction is presently before us. Virtually all of the delays of which the petitioner complains occurred in the course of appellate proceedings and resulted either from the actions of the petitioner or from the need to assure careful review of an unusually complex case."[5]
 {¶ 23} None of the delays were found to be purposeful, oppressive or vexatious.
 {¶ 24} We are mindful that Harrison involved an unusually complex case, and this case does not have that indicia of complexity. However, in Harrison, the United States Supreme Court suggests that a part of the unreasonableness standard is whether a defendant has suffered prejudice because of the delay. In Kline, we conclude no prejudice occurred. None of the witnesses were unavailable for the August 5, 2003 trial. All of the evidence seemed to be in order. Kline was able to examine the city's witnesses and put forth her theory of the case; consequently, no prejudice resulted.
 {¶ 25} In some cases, the United States Supreme Court has taken the position that time lapse may in and of itself amount to prejudice.[6] But, in these cases, the issue remained whether the delay hampered the defendant's ability to mount a defense. Consequently, we conclude an unreasonable prejudicial delay occurs when the defendant has shown an arbitrary, purposeful or vexatious delay, or where the defendant has shown that the delay so prejudiced her case, that she was unable to mount a defense. We find neither in this case. Accordingly, we overrule Kline's first assigned error.
 {¶ 26} In the second assigned error, Kline argues her right against double jeopardy was violated. We disagree. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through theFourteenth Amendment, protects a criminal defendant from multiple prosecutions for the same offense.[7] The purpose behind the prohibition against double jeopardy is that the State, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting her to embarrassment, expense and ordeal and compelling her to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, she may be found guilty.[8] The protections afforded by the Double Jeopardy Clause confer upon a criminal defendant the right to have her trial completed by a particular tribunal.[9] This right, nonetheless, is not absolute.
 {¶ 27} Kline contends while this court's writ of prohibition voided her conviction for obstruction of official business in the Lakewood Municipal trial, her acquittal in the same trial for her failure to obey an order was not disturbed. We are not persuaded.
 {¶ 28} After Kline's first appeal, the case was transferred to the Lakewood Municipal Court, where she faced three separate charges. The Lakewood Municipal Court found her guilty of failure to comply with a lawful police order and obstruction of official business, and not guilty of trespass. This court granted the writ of prohibition and restored her to her original status afterKline I.
 {¶ 29} We granted the writ of prohibition because the Lakewood Municipal Court was patently and unambiguously without jurisdiction to act whatsoever. Because the writ of prohibition applied to the entire matter, and Kline was thereafter restored to the position she was in when the Parma Court recused itself, the subsequent trial did not violate her rights against double jeopardy. Accordingly, we overrule Kline's second assigned error.
 {¶ 30} In her third assigned error, Kline argues the trial court erred in denying her motion to dismiss upon the grounds of selective prosecution. Kline raised this issue on her second appeal to this court in Kline II. We reversed the conviction for failure to obey a police order because the decision whether to bring the charge was based on the improper consideration that Kline had a pending suit against the police.[10] However inKline IV, we concluded the Lakewood Municipal Court lacked subject matter jurisdiction to proceed. Therefore, this court's decision in Kline II, which was based on the Lakewood proceedings, holds no precedential value. As stated above, once we found no subject matter jurisdiction in Kline IV, it was as if the Lakewood action never occurred.
 {¶ 31} To support the defense of selective prosecution, the defendant must show:
"`(1) that, while others similarly situated have not generallybeen proceeded against because of conduct of the type forming thebasis of the charge against him, he has been singled out forprosecution, and (2) that the government's discriminatoryselection of him for prosecution has been invidious or in badfaith, i.e., based upon such impermissible considerations asrace, religion, or the desire to prevent his exercise ofconstitutional rights.' (Quoting United States v. Berrios[C.A.2, 1974], 501 F.2d 1207, 1211.) See, also, State v.Getsy (1998), 84 Ohio St.3d 180, 203, 702 N.E.2d 866, 888;State v. Lawson (1992), 64 Ohio St.3d 336, 346,595 N.E.2d 902, 910; Freeman, 20 Ohio St.3d at 58, 20 Ohio B. Rep. at357, 485 N.E.2d."[11]
 {¶ 32} Kline fails to meet the first prong of the test. Although Kline argues other motorists were permitted to pass through the roadblock, while she was stopped, she presented no evidence that other motorists disobeyed police orders. Kline was prosecuted because she failed to comply with police orders.
 {¶ 33} Because Kline failed to meet the first prong of the test, we need not go into whether the prosecutor brought the charges in bad faith. Accordingly, Kline's third assigned error is overruled.
 {¶ 34} In the fourth assigned error, Kline contends the trial court erred in denying her Crim.R. 29 motion to dismiss. We disagree.
 {¶ 35} A motion for a judgment of acquittal is properly denied when reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.[12] The trial court must view the evidence in a light most favorable to the state, and determine whether the state presented sufficient evidence on each of the essential elements of the offense charged.[13]
 {¶ 36} We first consider whether sufficient evidence supports Kline's conviction for failure to comply. Parma Codified Ordinance 606.165(A) defines failure to comply as: "No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic."
 {¶ 37} The evidence indicated that Kline was instructed by an officer to not proceed with her car through a roadblock. Kline ignored the officer's request and drove her car through the roadblock. There was clearly sufficient evidence presented that Kline failed to comply with an officer's order regulating traffic.
 {¶ 38} We turn our attention to the charge of obstructing official business. The elements of obstruction of official business are: (1) No person, without privilege to do so, (2) with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity, (3) does an act which hampers or impedes a public official in the performance of his lawful duties.[14]
 {¶ 39} The testimony was uncontroverted that Lt. Cornachio told Kline she was under arrest. The testimony is also uncontroverted that the police started filling out paperwork to book Kline, took her possessions, and prepared an inventory. Kline admitted she understood that she was under arrest.[15]
 {¶ 40} Kline testified during the booking process, she was given water and permitted to take her prescribed Xanax medication for her anxiety attack. The police officers placed her anti-nausea medication on the table and she grabbed the bottle and put it down her blouse. According to Kline, she wanted to keep her anti-nausea medication to aid her during the panic attack, and she was also afraid that she would vomit.
 {¶ 41} Cornachio testified the officers requested that she turn over the medication because people in custody are prohibited from having medication on their person. Kline refused to take the medicine out of her blouse. When Kline refused to give up the medication, she was advised that if she did not, she could be charged. A jail matron was present, but Cornachio did not feel that the matron could handle the situation by herself. A female police officer was called to the station to assist. It took the female officer five to ten minutes to return.
 {¶ 42} The officer, Sharon Kleppel, testified that after she arrived and spoke with Kline, Kline removed the medication from her blouse and started to unscrew the cap. Kleppel pried the bottle out of Kline's hand. It took about five minutes to get the medication from her.
 {¶ 43} Kline asserts it was not her intent to obstruct public officials from performing their official duties. She merely wanted to keep her medicine so she would not get sick. However, a person acts purposely when it is her specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is her specific intention to engage in conduct of that nature.[16]
 {¶ 44} Here, Kline intended to keep the medicine from the police. She was told by the police that her conduct was interfering with the booking process and a female officer would have to be called to retrieve the medicine. A trier of fact could find that she intended to engage in conduct of a certain nature which hampered or delayed the booking process. Her motive for doing the act, to avoid getting sick, does not change the purposeful nature of her actions.[17]
 {¶ 45} Kline asserts her action did not hamper police duties; she claimed a matron was present who could have retrieved the medicine. Lt. Cornachio testified that in his judgment, the matron could not handle the situation by herself, and a female police officer was required. It took an additional fifteen minutes for the officer, who was out on patrol, to return to the station and forcibly retrieve the medication from Kline. We conclude there was sufficient evidence from which the trier of fact could find all of the elements of obstructing official business.
 {¶ 46} We also consider whether the police were performing an authorized act within their official capacity. An arrest was effectuated because the police told Kline she was under arrest, detained her, and Kline understood she was under arrest.[18] The process of booking Kline was an authorized act within the performance of the police department's official duties.
 {¶ 47} Finally, we turn our attention to the charge of criminal trespass. Criminal trespass is defined as follows:
{¶ 48} "No person without privilege to do so, shall do any ofthe following:
 * * * (a)(4) Being on the land or premises of another, negligentlyfail or refuse to leave upon being notified to do so by the owneror occupant or the agent or servant of either."[19]
 {¶ 49} Though Kline failed to set forth any argument relative to the charge of trespass, we note she was asked several times to leave the station, but refused. She was later warned of the consequence for noncompliance, and ultimately she was charged with criminal trespass. We conclude sufficient evidence existed by which the trier of fact could find all of the elements of criminal trespass. Accordingly, we overrule Kline's fourth assigned error.
 {¶ 50} In the fifth assigned error, Kline argues the trial court erred in denying her motion for severance of the charges. We disagree.
 {¶ 51} Two or more offenses may be charged in the same indictment if the offenses are of the same or similar character or are based upon the same acts or connected acts.[20]
However, if the defendant is prejudiced by the joinder of offenses, the court shall order an election, separate trial, or such other relief as justice requires.[21]
 {¶ 52} A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that her rights were prejudiced; she must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial; and, she must demonstrate that the court abused its discretion in refusing to separate the charges for trial.[22] The accused is not prejudiced if the evidence on each charge is simple and direct so that the jury can segregate the proof on each.[23]
 {¶ 53} A review of the record indicates that the evidence concerning each charge was simple and direct such that the trial court did not abuse its discretion in denying Kline's motion for severance. Kline's refusal to abide by the officer's order not to proceed past the roadblock commenced the chain of events resulting in the other charges being filed. The court's decision is not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion.[24]
 {¶ 54} Further, Kline has failed to affirmatively demonstrate how she was prejudiced by the joinder.[25] Having found no abuse of discretion, we conclude that joinder was proper. Accordingly, Kline's fifth assigned error is overruled.
 {¶ 55} In the sixth assigned error, Kline argues the trial court erred in refusing to permit her to use testimony from the Lakewood Municipal Court trial for impeachment purposes. We disagree.
 {¶ 56} The trial court did not permit either side to introduce and/or include testimony obtained during the proceedings conducted in the Lakewood Municipal Court. We find the trial court's action appropriate. As previously discussed, Kline filed and obtained a writ of prohibition from this court which voided the entire Lakewood Municipal Court proceeding. A judgment of conviction is void if rendered by a court having either no jurisdiction over the person of the defendant or no jurisdiction of the subject matter, i.e., jurisdiction to try the defendant for the crime for which she was convicted.[26]
 {¶ 57} The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity.[27] Thereafter, the parties are in the same position as if there had been no judgment.[28] Consequently, Kline cannot rely on anything from the Lakewood Municipal Court proceeding. Accordingly, the trial court's decision not to permit Kline to use trial testimony from the Lakewood proceeding for impeachment purposes was not error. Accordingly, we overrule the sixth assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Parma Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and Cooney, J., Concur.
[1] Kline IV, supra at 11.
[2] Pollard v. United States (1957), 352 U.S. 354; UnitedStates v. Ewell (1966), 383 U.S. 116.
[3] Id. at 361-362.
[4] Harrison v. United States (1968), 392 U.S. 219.
[5] Id. at 221.
[6] Barker v. Wingo (1972), 407 U.S. 514; Doggett v.United States (1992), 505 U.S. 647.
[7] Oregon v. Kennedy (1982), 456 U.S. 667, 671,72 L.Ed.2d 416, 102 S.Ct. 2083.
[8] Green v. United States (1957), 355 U.S. 184, 187-188,2 L.Ed.2d 199, 78 S.Ct. 221; see, also, United States v. Scott
(1978), 437 U.S. 82, 87, 57 L.Ed.2d 65, 98 S.Ct. 2187.
[9] Oregon v. Kennedy, supra 456 U.S. at 671-672; see, also,Arizona v. Washington (1978), 434 U.S. 497, 503-504,54 L.Ed.2d 717, 98 S.Ct. 824.
[10] Kline II, supra at 7.
[11] State v. Flynt (1980), 63 Ohio St.2d 132, 134.
[12] State v. Bridgeman (1975), 55 Ohio St.2d 261.
[13] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[14] Parma Codified Ordinance 606.14.
[15] Tr. at 459.
[16] R.C. 2901.22(A).
[17] See State v. Duke (Feb. 19, 1999), Fulton App. No. F-98-010.
[18] See State v. Darrah (1980), 64 Ohio St.2d 22.
[19] Parma Codified Ordinance 642.12.
[20] Crim.R. 8(A).
[21] Crim.R. 14.
[22] State v. Torres (1981), 66 Ohio St.2d 340, syllabus.
[23] State v. Franklin (1991), 62 Ohio St.3d 118, 122-23, certiorari denied (1992) 504 U.S. 960, 112 S.Ct. 2315,119 L.Ed.2d 235; State v. Roberts (1980), 62 Ohio St.2d 170, 175, certiorari denied (1980), 449 U.S. 879, 101 S.Ct. 227,66 L.Ed.2d 102.
[24] See State v. Adams (1980), 62 Ohio St.2d 151, 157.
[25] Torres, supra. See, also, State v. Ventus (Sept. 19, 1994), Butler App. No. CA94-03-057.
[26] Perry v. Maxwell, Warden (1963), 175 Ohio St. 369;Mills v. Maxwell, Warden (1963), 174 Ohio St. 523; State v.Wozniak (1961), 172 Ohio St. 517, 522.
[27] Tari v. State, 117 Ohio St. 481, 498; 31 O.Jur.2d 706, Judgments, Section 250.
[28] Romito v. Maxwell (1967), 10 Ohio St.2d 266, 267.